**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MICHAEL B. MARTISKO,**

        **Petitioner,**

**v.**                                              **Civil Action No. 1:10cv89
Criminal Action No. 1:07cr104-3
(Judge Keeley)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On June 3, 2010, the *pro se* petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. By Order entered on June 8, 2010, the petitioner was directed to file a more complete motion (Dkt.# 293) and he complied, filing a supplemental motion on June 28, 2010. (Dkt.# 295). The undersigned determined that summary dismissal of the petition was not warranted and the respondent was directed to file an answer. After an Order entered on July 21, 2010 (Dkt.# 302) granted the respondent's July 14, 2010 request for an extension of time (Dkt.# 301), the Government filed its response in opposition on August 30, 2010. (Dkt.# 305). Petitioner did not file a reply.

This case is before the undersigned for a report and recommendation pursuant to Standing Order No. 4 and LR PL P 83.01, et seq.

### II. Facts

**A. Conviction and Sentence**

Petitioner was named in seven counts of a fifteen-count indictment filed on October 16, 2007, 2004. On June 16, 2008, Petitioner pled guilty to Count Nine of the indictment, in which he was charged with aiding and abetting in the distribution of cocaine hydrochloride, in violation

of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)© and 18 U.S.C. §2. On September 10, 2008, Petitioner was sentenced to twenty-four months imprisonment with credit for time served, to be followed by three years supervised release.

**B. Direct Appeal**

Petitioner filed a notice of appeal on September 11, 2008. (Dkt.# 194). On appeal, appellate counsel filed an Anders[1] brief, questioning whether the district court complied with Federal Rule of Criminal Procedure 11 in accepting petitioner's plea, and whether petitioner's sentence was reasonable. Petitioner did not file a *pro se* Anders brief. On May 20, 2009, in an unpublished *per curiam* opinion, the Fourth Circuit Court of Appeals affirmed petitioner's conviction and sentence. (Dkt.# 220).

**C. Federal Habeas Corpus**

Petitioner's claims have been re-ordered here for clarity and expediency. Petitioner asserts that counsel was ineffective for:

1) filing a motion for a mental competency exam on his behalf without consulting him first; and

2) being ineffective generally, both before and after he entered his plea, by failing to: represent his needs; failing to adequately explain various things; by lying to him; arguing points that prejudiced his case; and by making promises that they[2] did not fulfil.

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Petitioner was initially represented by appointed counsel Kumaraswamy Sivakumaran. In February 2008, attorney Jeff Harris was appointed to serve as co-counsel.(Dkt.# 89). Attorney Harris filed a motion to withdraw on August 26, 2008 (Dkt.# 182) which was granted by Order entered August 28, 2008. (Dkt.# 183), leaving petitioner represented by only Attorney Sivakumaran at sentencing and on appeal.
  After petitioner's supervised release was revoked the first time, attorney Richard Walker was appointed to represent him on November 13, 2009. (Dkt.# 233). On March 25, 2010, Attorney Walker was also appointed to represent petitioner on his appeal of the judgment revoking his supervised release (Dkt.# 271), but pursuant to

3) The District Court deceived and misled him into pleading guilty by telling him his guideline range was 21 - 27 months, and promising him he could get out on bond after his plea;

4) The District Court miscalculated his criminal history by double-counting one of his prior convictions.

As relief, Petitioner seeks a reversal of his conviction.

**D. Government's Response**

The Petitioner validly waived his right to file a § 2255 motion was filed and therefore it should be dismissed.

1) Counsel was not ineffective for moving for a mental competency evaluation, given petitioner's long psychiatric history and his apparent incapability in assisting counsel in his own defense, because it is counsel's duty to ensure that his or her client can do so. Moreover, the Fourth Circuit Court of Appeals has long held that it is error to defer to the wish of a person charged with a crime, where there is reasonable cause to believe they are presently insane or so mentally incompetent that they are unable to understand the proceedings against them or properly assist in their own defense. See U.S. Johnson, 527 F.2d 1104, 1106 (4th Cir. 1975). A review of the record demonstrates that counsel's motion was made in good faith. Petitioner was ultimately found competent and his claims are mooted by the ends of justice and his subsequent guilty plea. Petitioner has offered nothing to show counsel's performance was deficient.

2) Petitioner's claim that the Court led him to believe that he would be placed on bond if he

---

Walker's motion to withdraw a few days later, attorney Tracy Weese was appointed as appellate counsel for that appeal on April 8, 2010. (Dkt.# 272). Attorney Walker was re-appointed to represent petitioner on November 2, 2010, after petitioner violated the terms of his second supervised release and it was revoked. (Dkt.# 324). When petitioner appealed that judgment of the revocation of supervised release, Attorney Walker and attorney Kristen Leddy of the Federal Public Defenders office served as appellate counsel. (4th Cir. Dkt.# 2) (10-5191).

3

pled guilty and that he would not have entered the plea had he known he would not receive bond has no merit. Petitioner's bond was revoked was because he failed to appear at a hearing, and he was advised by the Court at the final pretrial conference, nearly five months before he pled guilty, that he would not be released on bond. Further, at the plea hearing, before he entered his plea, the detention issue was again raised, and counsel advised the Court that the Government intended to move to invoke the Mandatory Detention Act after petitioner pled guilty. Petitioner entered his plea anyway. Petitioner's Rule 11 colloquy establishes that his plea was knowing and voluntary and this claim should be dismissed.

3) Petitioner's claims of ineffective assistance of counsel are belied by his sworn statements made at his Rule 11 hearing regarding his satisfaction with counsel. Further, even if petitioner's claim that counsel's performance was substandard is correct, he has not shown that it was not what is constitutionally compelled, or that there was a reasonable possibility that but for counsel's unprofessional errors, the result of the proceeding would have been any different.

4) Petitioner's claim that his bond was revoked, causing him to lose all his assets and rendering him incapable of abiding by his supervised release conditions, is foreclosed by the entry of an intelligent and voluntary plea six months after the revocation, in which he testified that he understood all the rights he was forfeiting by pleading guilty.

E. **Petitioner's Releases, Subsequent Revocations and Re-Incarcerations**

After the filing of this case, Petitioner was released from federal custody on October 26, 2010. He has since been re-incarcerated.[3]

---

[3] Petitioner was released from his original sentence on October 9, 2009 to begin his three-year period of supervised release. He violated his supervised release in less than a week. However, his supervised release was not revoked until approximately five months later, on March 15, 2010, after several more violations occurred. As a result of that revocation, he was sentenced to eight more months of imprisonment, to be followed by 28 months of

**F.  Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his sentence, thus barring review of Grounds One, Three and Four, and the pre-plea claims of ineffective assistance of counsel raised in Ground Two. Petitioner's remaining Ground Two post-plea claims of ineffective assistance of counsel have no merit.

## III.  Analysis

**A.     Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.     Waiver**

[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."

---

supervised release.  It was during this eight-month incarceration that he filed the instant § 2255 petition.  He has since finished serving that eight-month sentence.  Within two days of beginning his second round of supervision, he tested positive for THC during an intake appointment.  He was rearrested on November 1, 2010. At a November 15, 2010 revocation hearing, he was sentenced to sixteen months of incarceration with no supervised release.  Dkt.# 338 at 4 - 25).

Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court

expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the

Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to

> bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the District Court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 210 at 13 and 23). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in

9

exchange for some of the Government's concessions, he was waiving his right to appeal or to collaterally attack his conviction, as long as his sentence was within the maximum of not more than twenty years' imprisonment, and it was based on a base level determination of 12 or lower. (Id. at 13 and 23). Petitioner's base offense level was 12 and he received a sentence of 24 months, or 2 years imprisonment - - the lowest end of the guideline. Accordingly, the undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence by filing this § 2255 motion, except for claims of ineffective assistance of counsel arising after the entry of the guilty plea. Thus, a review of petitioner's Ground One claim of ineffective assistance of counsel, those of his Ground Two pre-plea claims of ineffective assistance of counsel that occurred prior to the entry of his plea,[4] as well as his Ground Three and Four claims against the District Court are all precluded.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised ineffective assistance of counsel claims arising after the entry of the plea, those claims are excepted from his waiver and will be given review.

B.      **Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States

---

[4] Petitioner's Ground Two claims of ineffective assistance of counsel before the plea, most of which are vague and insufficiently-pled, are that: Attorney Sivakumaran was not educated enough to effectively represent him and that on the day before his January 24, 2008 final pre-trial hearing, Sivakumaran told petitioner that he planned to request that petitioner be released back out on bond in order to wrap up his personal affairs and that he would help him do so, but then he reneged on that promise. Attorney Sivakumaran incorrectly advised him that he did not have the right to know the names of the witnesses against him until after he pled guilty; and Sivakumaran "lied, took shortcuts and did several things to cause me to plead guilty." Further, he alleges that both of his attorneys advised him that if he pled guilty he would have a 'very strong chance of getting back out on bond." Neither of his attorneys ever advised him that Government could invoke the Mandatory Detention Act to keep him from getting back out on bond. Both of his attorneys ignored him, and instead "worked with" the District Judge when she "maliciously revoked his bond and intentionally kept him in custody." Both his attorneys made several decisions without his consent and misled him on several issues including the plea agreement.

10

established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any ineffective assistance of counsel claims occurring

prior to the entry of his guilty plea. Therefore, only petitioner's post-plea claims against counsel will be given review.

**Ground Two: Whether Counsel Was Generally Ineffective After the Entry of the Plea, by Failing to Represent Petitioner's Needs, Lying to Him, Arguing Points that Prejudiced Him and Making Promises that they Did Not Fulfil.**

Petitioner contends that counsels' performance was deficient generally, when they failed to consult with him on several issues, made decisions without his consent, and misled or outright lied to him. Further, he argues, at sentencing, Attorney Sivakumaran argued points that prejudiced his case. Finally, he alleges that Sivakumaran's performance was deficient because he only filed an Anders brief on appeal.

In examining a claim of ineffective assistance of counsel, there exists a strong presumption that counsel's conduct was within a wide range of reasonable professional assistance. See Strickland, 466 U.S. at 688-689; Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995). A defendant is not entitled to "receive the best possible representation at trial; Strickland only requires adequate counsel judged by a standard of reasonableness in light of the prevailing norms of practice." Hunt v. Nuth, *supra* at 1333. "In considering claims of ineffective assistance of counsel, we address not what is prudent or inappropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)) (internal quotations omitted). Ordinarily, courts considering a claim of ineffective assistance should not second-guess strategic decisions of counsel. (Citation omitted). Again, the "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable" in an ineffective assistance of counsel claim. Strickland, 466 U.S. at 690; accord Bell v. Evatt, 72 F.3d 421 (4th Cir.1995). Furthermore, the Court needs to be highly deferential in

scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. Strickland, 466 U.S. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991).

In reviewing the deficiency prong in claims of ineffective assistance of counsel, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90.

Petitioner's claims against counsel are that approximately seven weeks after he entered his plea, at an August 6, 2008 hearing on his motion for release of custody, he tried to express to the court how his attorneys had "made several decissions [sic] without my consent and mislead [sic] me on several issues . . . [including] the plea agreement, the motion hearing that was presently in progress and a few other issues." (Dkt.# 295-3 at 4). He does not provide details, other than to allege that Attorney Harris advised him to wait for him to come help him draft his "defendant's version"of the offense form "and not to include Dr. Sivakumaran because he didn't know what he was doing." (Dkt.# 295-3 at 6). He contends that Attorney Harris did not keep this promise;[5] he was "always late for hearings" and "never brought up any issues [petitioner] . . . mentioned before hearings. He seemed to be very lazy and put things off till last minute." (Id.). He does not elaborate, nor does he explain how Attorney Harris' alleged failures affected the outcome of his case.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). The petitioner must come forward with some evidence that the claim might have merit. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). Allegations amounting to nothing more than conclusions provide no basis for an evidentiary hearing.

---

[5] He later admits that Attorney Sivakumaran did help him draft his version of the offense.

13

It is simply not enough for a petitioner to allege that counsel may have been deficient in his representation. In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir.) ("bald assertions and conclusory allegations do not provide sufficient ground. . . to require an evidentiary hearing;" contrary rule would "encourage meritless petitions burdening judicial resources"), cert. denied, 116 L. Ed. 2d 232, 112 S.Ct. 280 (1991); see also United States ex rel. Simmons v. Gramley, 915 F.2d 1128, 1138-39 (7th Cir. 1990); Lavernia v. Lynaugh, 845 F.2d 493, 501 (5th Cir. 1988); Spillers v. Lockhart, 802 F.2d 1007, 1009 (8th Cir. 1986). Here, petitioner has come forward only with the barest of allegations, all of which are unsupported. He has not produced any evidence that counsel was deficient in his representation, let alone shown that he prejudiced thereby.

Next, Petitioner admits that although Attorney Sivakumaran did help him draft his "defendant's version" of the offense, "he told me to write things that I didn't feel were true." (Dkt.# 295-3 at 6). Petitioner alleges that Sivakumaran told him to "falsely confess" that he was a drug dealer and sold drugs regularly when that was not true. (Id.).

A review of the PreSentence Report reveals that petitioner's version of the offense makes no admission of dealing drugs:

> My grandmother died on 9/17/04 and I was depressed she was my mom and dad all in one and I knew I wouldn't get the same love and care from my natural mother and father or anyone else for that matter. I also was having a tough time holding down a job so I lost faith and hope in myself because I couldn't pay the bills. So, then I started using drugs as a slow suicide attempt because I wanted to give up. Although, I managed to stop using drugs several times, I just couldn't. S/ Michael B. Martisko

(Dkt.# 195, ¶ 26 at 6).

Even assuming, *arguendo,* that Attorney Sivakumaran did direct petitioner to "falsely confess" to dealing drugs in his version of the offense, clearly petitioner did not take the advice, so he cannot prove prejudice. This claim has no merit.

Petitioner's next claim is that at sentencing, Attorney Sivakumaran was unsuccessful in his objection to one of petitioner's prior convictions being included in his criminal history because it occurred outside of the 10 year period for purposes of U.S.S.G. 4A1.2(e)(2). The objection was overruled over counsel's vigorous argument, because the conviction was properly found to be countable, as it fell well within the 10-year period. (Dkt.# 207 at 8). Petitioner also complains that Sivakumaran argued against including a criminal history point for a prior assault petitioner committed against a nurse while he was a patient in a mental hospital, saying that he knew it would "upset the Judge and cause her to come down harder on me. I never wanted Dr. Sivakumaran to argue that issue." (Dkt.# 295-4 at 2).

A cursory review of the record reveals that counsel zealously attempted to obtain the best possible sentence for petitioner. Counsel filed a sentencing memorandum on petitioner's behalf, raising a number of relevant considerations. He filed three objections to the PSR, and vigorously argued one of them[6] at the sentencing hearing, regarding petitioner's criminal history category - - specifically, the possibility that petitioner might have been assessed unwarranted criminal history points based on various prior convictions. Simply because the objection was overruled does not render counsel ineffective. It merely means that the record showed that petitioner's criminal history was serious enough to warrant the Court's declining it. It is simply not enough for a petitioner to

---

[6] The other two objections were factual corrections adopted by the Probation Officer in the PSR. (Dkt.# 207 at 4).

15

allege that counsel may have been deficient in his representation at the sentencing hearing. In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Here, petitioner has proven neither ineffectiveness nor can he show prejudice.

Petitioner next argues that Attorney Sivakumaran never told him, until after sentencing, that he had the option to have some of his charges expunged. Petitioner does not elaborate on this insufficiently-pled claim. Again, habeas petitions must meet heightened pleading requirements. McFarland v. Scott, *supra* at 856.

Finally, petitioner asserts that Attorney Sivakumaran, who also served as appellate counsel, told him if he "gave him another chance, he would help me appeal the sentence and procedure of the court, but then he filed the Anders v. California brief which defeated the whole purpose of him helping me." (Dkt.# 295-4 at 4). Petitioner does not expand on this tersely-worded claim.

The standard of effective assistance of appellate counsel is the same as for trial counsel. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness in light of the prevailing norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal citations and quotations omitted). On review, however, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." Bell v.

Jarvis, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). "Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the landmark of effective advocacy." Bell v. Jarvis, 236 F.3d at 164 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). However, although it is "still possible to bring a Strickland claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Petitioner's claim that appellate counsel failed him by merely filing an Anders brief on his behalf is insufficiently pled. Not only has petitioner has failed to offer any details on what other more meritorious issue likely would have been more successful on appellate review than those actually raised by counsel, petitioner had the opportunity to file his own *pro se* Anders brief and chose not to do so. Because petitioner has neither proven ineffectiveness nor prejudice, relief should be denied.

### III.  Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **GRANTING** the Respondent's Motion to Dismiss and **DISMISSING** Petitioner's § 2255 motion with prejudice.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner and counsel of record.

DATED: June 20, 2011.

*James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE